UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FRANK MCBRIDE, III,

          Plaintiff,

    vs.

PENTAGON TECHNOLOGIES GROUP, INC., et al.,

          Defendants.

Case No:  C 15-2696 SBA

**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS**

Dkt. 4, 9.

       Plaintiff Frank A. McBride ("McBride" or "Plaintiff") brings this diversity jurisdiction action against his former employer, Pentagon Technologies Group, Inc. ("Pentagon"), claiming that he is owed deferred compensation under the terms of his Equity Deferred Compensation Agreement ("EDC Agreement").  Also named as party-defendants are Baird Capital Partners III Limited Partnership, BCP III Special Affiliates Limited Partnership, BCP III Affiliates Fund Limited Partnership (collectively "BCP Partnerships") and Baird Capital Partners Management Company III, L.L.C. ("Baird Capital Partners"), which purchased a majority interest in Pentagon in July 2000.[1]

       The parties are presently before the Court on Pentagon and Baird's respective motions to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. 4, 9.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motions for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] Baird Capital Partners is the general partner of each of the BCP Partnerships, and utilized each of those partnerships to invest in Pentagon.  See First Am. Complaint-Corrected) ("FAC") ¶¶ 4, 5.  Baird Capital Partners and the BCP Partnerships collectively are referred to as "Baird."

# I.      BACKGROUND

## A.      FACTUAL SUMMARY

This case arises out of McBride's employment with Pentagon, where he served as its Chief Executive Officer from 1998 to 2008.  Order at 2, Dkt. 20.  Pentagon, which "sells products and services that improve the front-end process tools used in the manufacturing of semiconductors," was incorporated in Ohio in 1998 and established its headquarters in Northern California.  Id. at 5; FAC ¶¶ 11, 12.  At the time Pentagon was formed, Plaintiff was awarded a 9% equity stake in the company.  Id. ¶ 12.

In 2000, Baird purchased majority interest in Pentagon for approximately $22 million.  Id. ¶ 13.  In connection with Baird's investment, Plaintiff entered into the EDC Agreement, under which he was given the economic value of his equity stake in Pentagon through a combination of common stock and deferred compensation.  Id. ¶¶ 15-16.  The amount of Plaintiff's initial deferred compensation was $1,936,398.60, which was credited to a Deferral Contributions Account.  Id. ¶ 17.  The EDC Agreement states that the Deferral Contributions Account is "a bookkeeping account maintained by the Company and shall reflect the Deferred Compensation."  Id. ¶ 17; Obselik Decl. Ex. 1 (EDC Agt.) ¶ 2.2, Dkt. 4-1.  The Deferral Contributions Account is characterized as an unsecured liability of Pentagon, wherein "[Plaintiff] is solely an unsecured creditor of the Company with respect to any amount payable to him under this Agreement."  FAC ¶ 17; EDC Agt. 3.1.

The Deferral Contributions Account was to be invested in "one or more Permitted Investments as of the date of [the EDC] Agreement."  Id. ¶ 18.  A "Permitted Investment" is defined as "shares of Series A Preferred Stock, par value $.01 per share, of the Company, and thereafter such funds, investments or other assets of equal fair market value as may be approved by the Committee from time to time for purposes of this Agreement."  Id.; EDC Agt. § 1.14.  The term "Committee" refers to "the Compensation Committee of the Board of Directors or, if none exists, the entire Board of Directors."  FAC ¶ 18; EDC Agt. ¶ 1.7.[2]

---

[2] According to Plaintiff, the Pentagon Compensation Committee was controlled by Baird, through its agents.  FAC ¶ 19.

The balance in the Deferral Contributions Account was payable to Plaintiff, inter alia, as of July 17, 2010, or upon the occurrence of specified events, including a "BCP Liquidity Event."  FAC ¶ 22; EDC Agt. § 4.2.  A BCP Liquidity Event refers to a transaction in which Baird received at least 80% of the value of its investment in the Company's Series A preferred stock (or replacement securities).  FAC ¶ 22; EDC Agt. § 1.4.

In August 2002, Pentagon's Board amended the Company's articles of incorporation to provide for the issuance of a new Series B stock, which carried a dividend rate of 25%.  FAC ¶ 23.  The following year in October 2003, the Board authorized the issuance of new Series C stock, which carried a 10% dividend and a 7-to-1 return on redemption.  Id. ¶ 25.  Both the new Series B and Series C stock were senior to Series A stock.  Id. ¶ 26.  In 2006, Pentagon declared a $10 million dividend on its Series B and Series C stock.  Id. ¶ 27.  Pentagon borrowed most of the funds from its bank lending group to pay the dividend, most of which went to Baird.  Id.

In 2008, Irv Pfister, a partner in Baird Capital Partners and the Chairman of the Board, "forced" Plaintiff to resign his position.  Id. ¶ 28.  As part of his separation, Plaintiff was required to surrender his common stock, options and management appreciation rights.  Id.  Plaintiff retained his Series B preferred stock and deferred compensation.  Id.

In May 2010, Plaintiff contacted Pentagon in anticipation of the July 17, 2010 deadline for the payment of his deferred compensation.  Id. ¶ 29.  In response, Rob Ospalik ("Ospalik"), a partner with of Baird Capital Partners told Plaintiff that Pentagon lacked the money to pay his deferred compensation and that all excess cash was being paid to the banks.  Id. ¶ 30.  Ospalik further stated that Plaintiff would not receive any payout until there was a liquidity event and that all "participants" would be paid equally after the banks were paid.  Id.

On July 15, 2010, two days prior to the due date for deferred compensation payout, Ospalik sent Plaintiff a Subordination Agreement.  Id. ¶ 31.  Ospalik told Plaintiff that the Pentagon Board of Directors was requiring him to subordinate his rights, pursuant to § 6.6 of the EDC Agreement.  Id.  In particular, the draft Subordination Agreement specified that

Plaintiff's right to the payment under the EDC Agreement is deemed subordinate to Pentagon's obligations to its senior lending group.  Id. ¶ 32.

Plaintiff proposed modifications to the Subordination Agreement to confirm his right to receive deferred compensation and limit the subordination period.  Id. ¶ 33.  By letter dated August 11, 2010, Ospalik rejected the requested changes.  Id. ¶ 36.  He added that Plaintiff's Deferral Compensation Account was worthless because it was deemed invested in Pentagon Series A Preferred Stock, which had "no value."  Id.  Opsalik warned Plaintiff that if he did not sign the Subordination Agreement, Pentagon would declare him to be in breach of the EDC Agreement.  Id. ¶ 34.  Plaintiff signed the Subordination Agreement, without modification.  Id. ¶ 35.  Plaintiff asserts that Opsalik's claim that his Deferral Compensation Account had no value is contradicted by Pentagon's financial statements.  Id. ¶ 37.

In May 2011, Baird, as Pentagon's majority shareholder, sponsored a proposal to eliminate all outstanding shares of Pentagon stock.  Id. ¶ 80.  In its stead, the holders of Series C preferred shares, which was principally or entirely Baird, would be issued voting common stock.  Id.  The effect of this arrangement was to maintain Baird's interest in Pentagon while extinguishing the interests of all other shareholders.  Id.  Plaintiff alleges that Baird's action was "the final step in its plan to deny [him] his rights as a shareholder . . . in Pentagon.  Id.

### B.   PROCEDURAL HISTORY

On December 1, 2014, Plaintiff filed the instant action in the Northern District of Ohio, alleging six claims for relief against Pentagon and Baird.  The first through third claims of the original Complaint alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq.  The remaining claims were for declaratory relief to declare that the Subordination Agreement is unconscionable (fourth claim); breach of contract based on Pentagon's refusal to pay the value of his Series B shares as required by the Pentagon Subscription Agreement ("Subscription Agreement"),

dated August 14, 2002 (fifth claim); and breach of fiduciary duty against Baird, based on his position as a majority shareholder of Pentagon (sixth claim).

In response to the Complaint, Pentagon filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim, and Rule 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue.  Dkt. 9.  Alternatively, Pentagon moved to transfer venue to the Northern District of California for the convenience of the parties and witnesses, pursuant to 28 U.S.C. § 1404(a).  Baird separately moved under Rule 12(b)(6) to dismiss claims three and four and the "majority" of claim six.  Dkt. 4 at 1.

Before briefing on Defendants' motions was completed, Plaintiff filed a First Amended Complaint ("FAC"), which eliminated the ERISA claims and added claims for breach of contract and breach of the covenant of good faith and fair dealing based on the EDC Agreement.  Dkt. 11, 12, 18.  Though acknowledging that Plaintiff had filed an amended pleading, Defendants filed their respective reply briefs, noting that the parties had agreed to adjudicate the motions in relation to the original complaint.  Dkt. 16 at 1 n.1.  On June 11, 2015, the Ohio District Court granted Pentagon's alternative § 1404(a) motion, resulting in the transfer of the action to this District.  The parties have now requested that the Court address the arguments for dismissal presented in their previously filed motions that were not addressed by the Ohio District Court.  Dkt. 44, 45.[3]

## II.   DISCUSSION

### A.   BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (EDC AGREEMENT)

In his first claim, Plaintiff alleges that Pentagon breached the EDC Agreement by failing to disburse the balance in his Deferral Contributions Account, which, as of July 17, 2010, was valued at $6,297,939.30.  FAC ¶¶ 42-44.  Plaintiff's second claim for breach of

---

[3] The Court notes that upon its filing, the FAC became the operative pleading. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (stating that it is a "well-established doctrine that an amended pleading supersedes the original pleading.").  As such, the Court construes the arguments presented in the instant motions as being directed to the claims alleged in the FAC, not the original complaint.

the covenant of good faith and fair dealing alleges that Pentagon acted in bad faith in relation to the EDC Agreement through various acts, such as threatening the loss of his deferred compensation if he refused to sign the Subordination Agreement. Id. ¶ 52.

A breach of contract claim under Ohio law has four elements: (1) the existence of a contract; (2) the plaintiff's performance; (3) the defendant's breach; and (4) damages. Pavlovick v. Nat'l City Bank, 435 F.3d 560, 565 (6th Cir. 2006) (interpreting Ohio law).[4] The implied covenant of good faith and fair dealing is violated "when a party acts in a manner which would deprive the other party of the right to receive the benefits of their agreement." PepsiCo, Inc. v. Cent. Inv. Corp., Inc., 268 F.Supp.2d 962, 967 (S.D. Ohio 2001) (citations omitted).

The original complaint alleged a breach of contract claim based on the Subscription Agreement only. The FAC added a second contract claim based on the EDC Agreement, which is set forth as the First Claim for Relief. Because Pentagon's motion to dismiss was directed to the original complaint, it contains no argument regarding the EDC Agreement. Although Pentagon now argues in its reply that Plaintiff's claim based on the EDC Agreement should be dismissed, Pentagon's Reply at 12-13, Dkt. 17, the Court does not consider arguments that were not first presented in the moving papers, see Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("[A court] need not consider arguments raised for the first time in a reply brief."). Pentagon's motion to dismiss Plaintiff's first claim for breach of contract is therefore DENIED. However, because a claim for breach of the covenant of good faith and fair dealing is not an independent claim, the Court sua sponte dismisses such claim. See McCubbins v. BAC Home Loans Servicing, L.P., No. 2:11-cv-547, 2012 WL 140218, at *46-47 (S.D. Ohio Jan. 18, 2012) (noting that a claim for breach of the covenant of good faith and fair dealing is subsumed in a claim for breach of contract, and cannot be asserted as a stand-alone claim). The Court grants Plaintiff leave to amend

---

[4] The EDC Agreement contains a choice of law clause, which specifies that it "shall be construed in accordance with the law of the state of Ohio, to the extent not preempted by any applicable federal law." EDC Agt. § 6.9. None of the parties dispute the applicability or enforceability of this clause.

his breach of contract claim to incorporate allegations that Pentagon breached the covenant of good faith and fair dealing.

**B.    DECLARATORY JUDGMENT (RESCISSION)**

In his third claim for declaratory judgment, Plaintiff seeks rescission of the Subordination Agreement on the ground that it is unconscionable.  FAC ¶¶ 56, 61.  Defendants contend that Plaintiff's claim is barred by the doctrine of laches.  "Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (internal citations and quotation marks omitted).

"To successfully invoke the doctrine the party invoking it must establish by a preponderance of the evidence the following four elements: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party." Sims v. Anderson, 38 N.E.3d 1123, 1130 (Ohio Ct. App. 2015).  At the motion to dismiss stage, a defendant seeking dismissal based on a laches defense "must rely exclusively upon the factual allegations set forth in the complaint." Kourtis v. Cameron, 419 F.3d 989, 1000 (9th Cir. 2005), abrogated on other grounds in Taylor v. Sturgell, 553 U.S. 880 (2008).

Defendants contend that Plaintiff was contractually obligated to sign the Subordination Agreement under § 6.6 of the EDC Agreement, and therefore, his request to rescind the Subordination Agreement is tantamount to seeking to rescind the EDC Agreement.  In that regard, Defendants assert that it is too late for Plaintiff to challenge the EDC Agreement because they have "undergone a number of refinancing and restructuring transactions" in the fifteen years since its execution.  See Baird Mot. at 12 (citing Compl. ¶ 39).  The Court is unpersuaded that Defendants' laches defense can be adjudicated based on pleadings.  Even if Defendants are correct that Plaintiff is, in effect, challenging part of the EDC Agreement, the mere passage of time is insufficient to establish the requisite prejudice for a laches defense.  See State ex rel. Meyers v. Columbus, 71 Ohio St.3d 603,

605 (1995) ("Prejudice will not be inferred from a mere lapse of time.").  Moreover, the

allegation that Pentagon entered into financial transactions subsequent to the execution of

the EDC Agreement, standing alone, fails to establish that Defendants suffered prejudice as

a result.  See Kinney v. Mathias, 10 Ohio St.3d 72, 75 (1984) (holding that the father's

change of financial position was, "as a matter of law, insufficient to rise to the level of

prejudice necessary to invoke the doctrine of laches."); State ex rel. Doran v. Preble Cty.

Bd. of Commrs., 995 N.E.2d 239, 246 (Ohio Ct. App. 2013) (citation and internal

quotations omitted) ("What constitutes material prejudice is primarily a question of fact to

be resolved through a consideration of the special circumstances of each case.").

Defendants' motion to dismiss Plaintiff's claim for declaratory judgment is therefore

DENIED.[5]

### C.   BREACH OF CONTRACT (SUBSCRIPTION AGREEMENT)

In his fourth claim, Plaintiff alleges that Pentagon breached the Subscription

Agreement by refusing "to redeem the shares for their value, including accrued dividends"

after he tendered his Series B shares for redemption.  FAC ¶ 79.  He further alleges that

"Pentagon's purported elimination of Series B preferred shares in May 2011 was manifestly

unfair and a breach of the company's duty of good faith and fair dealing to the Series B

shareholders."  Id. ¶ 67.  The pertinent sections of the Series B Subscription Agreement

state:

> 3.   Redemption
>
> (a)   Mandatory Redemption. Except and to the extent prohibited by applicable law, the Corporation shall redeem all shares of Series B Preferred Stock outstanding on December 31, 2006 by paying each such sum of the Series B Liquidation Value plan an amount equal to the dividends accrued but unpaid thereon (the "Redemption Price").
>
> (b)   . . . .

---

[5] Pentagon also argues that "[it], its lenders and its investors have substantially changed positions in reliance on the Subordination Agreement."  Pentagon Mot. at 18. As noted, simply changing positions does not necessarily establish prejudice.

(c)    <u>Default</u>.  If the Corporation fails to redeem the Series B Preferred Stock by December 31, 2006, dividends shall accrue on the Series B Preferred Shares at the Dividend Payment Amount plus 2%, and <u>such dividends shall accrue up and until such time as the Redemption Price of all of the outstanding Series B Preferred Shares is paid in full</u>.  Dividends accruing after December 31, 2006 may be paid only in cash.

Christeson Decl. Ex. C (Subscription Agreement) at A-6, ¶ 3(c) (emphasis added), Dkt. 9-2.

Pentagon argues that its refusal to redeem Plaintiff's stock is not a breach, but merely a "default" that entitles him to nothing more than a 2% increased dividend.  The Court disagrees.  As set forth above, the Subscription Agreement provides that Pentagon "shall" redeem the stock by December 31, 2006.  Under the "default" provision, the consequence of failing to timely redeem the stock is that Pentagon becomes obligated to pay an increased dividend.  Nothing in the agreement, however, states that the payment of such dividend obviates Pentagon's contractual obligation to redeem the stock.  Indeed, the provision that the enhanced dividend shall continue to accrue "<u>until such time</u> as the Redemption Price of all of the outstanding Series B preferred shares is <u>paid in full</u>" underscores that Plaintiff's right to redeem continues to exist in tandem with the accrual of additional dividends.

With regard to Plaintiff's related bad faith claim regarding the elimination of Series B preferred shares in May 2011, <u>see</u> FAC ¶ 67, Pentagon asserts, in effect, that Plaintiff assumed the risk that his stock would lose value, <u>see</u> Pentagon Mot. at 20.  This mischaracterizes Plaintiff's claim.  The pleadings specifically allege that Pentagon used its position as the majority shareholder of Pentagon to eliminate the interests of other shareholders, including those of Plaintiff.  FAC ¶¶ 38, 39, 80, 81.  In Plaintiff's view, the loss of stock value was not attributable to natural market forces, but rather was a deliberate course of conduct by Baird to undermine his interests as a minority shareholder.  As such, for purposes of the instant motion, Plaintiff has sufficiently alleged a claim for breach of duty of good faith and fair dealing.  Baird's motion to dismiss Plaintiff's Fourth Claim for Breach of Contract is therefore DENIED.

1

### D.   BREACH OF FIDUCIARY DUTY

2

Plaintiff's fifth claim for breach of fiduciary duty is directed against Baird.  He

3

alleges that Baird, as a majority shareholder, owed a fiduciary duty to minority

4

shareholders, such as himself.  FAC ¶ 73.  According to the FAC, since 2006, Baird has

5

pursued a "scheme to control Pentagon" for its own benefit, to Plaintiff's detriment.  Id.

6

¶ 74.  Baird allegedly "took the final step in its plan to deny McBride his rights as a

7

shareholder" in May 2011 when it effectively eliminated the value of his Deferral

8

Contributions Account.  Id. ¶ 80.

9

"The elements for a breach of fiduciary duty claim are: (1) the existence of a duty

10

arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury

11

resulting proximately therefrom."  Camp St. Mary's Ass'n of W. Ohio Conference of the

12

United Methodist Church, Inc. v. Otterbein Homes 176 Ohio App.3d 54, 68 (Ohio Ct. App.

13

2008) (internal quotation marks omitted).  "A claim of breach of a fiduciary duty is

14

basically a claim of negligence, albeit involving a higher standard of care."  Strock v.

15

Pressnell, 38 Ohio St.3d 207, 216 (1988).  Under Ohio law, claims for breach of fiduciary

16

duty are governed by the four-year statute of limitations set forth in Ohio Revised Code

17

§ 2305.09(D).

18

Baird contends Plaintiff's breach of fiduciary claim should be dismissed insofar as it

19

is premised on any conduct occurring outside the four-year limitations period, i.e., prior to

20

December 31, 2010.  See Baird Mot. at 14-15.  Plaintiff responds that he is not seeking

21

damages based on specific conduct occurring prior to that date, but that those actions are

22

alleged because they culminated in Baird's efforts in May 2011 to eliminate the preferred

23

stock upon which his deferred compensation was based.  Since Plaintiff is not predicating

24

his breach of fiduciary claim on pre-December 31, 2010 conduct, Baird's motion to dismiss

25

is unnecessary.  Baird's motion to dismiss Plaintiff's Fifth Claim for Relief is therefore

26

DENIED.

27

28

**III.    <u>CONCLUSION</u>**

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Baird and Pentagon's respective motions to dismiss are DENIED.  The Court sua sponte dismisses Plaintiff's Second Claim for Relief, and grants Plaintiff leave to amend to incorporate the allegations set forth therein into his First Claim for Relief for breach of contract.  Plaintiff shall file a Second Amended Complaint within twenty-one (21) days of the date this Order is filed.  Defendants shall file a responsive pleading within fourteen (14) days of the date Plaintiff files his Second Amended Complaint.

IT IS SO ORDERED.

Dated:  12/22/15

SAUNDRA BROWN ARMSTRONG
Senior United States District Judge